Bridget S. Johnsen (SBN 210778)
bjohnsen@sidley.com
SIDLEY AUSTIN LLP
555 West Fifth Street
Los Angeles, California 90013
Telephone: (213) 896-6678
Facsimile: (213) 896-6600

Nicholas P. Crowell *(pro hac vice application pending)*
ncrowell@sidley.com
Jon W. Muenz *(pro hac vice application pending)*
jmuenz@sidley.com
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019
Telephone: (212) 839-5300
Facsimile: (212) 839-5599

*Attorneys for all Defendants (except Broadspire Services, Inc. and Crawford & Company, Inc.)*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SOURCE ONE STAFFING, LLC.<br><br>Plaintiff,<br><br>v.<br><br>BROADSPIRE SERVICES, INC, et al.,<br><br>Defendants. | Case No. 11 CV 224-GW (PJWx)<br><br>**OPPOSITION TO PLAINTIFF'S MOTION TO REMAND TO THE CALIFORNIA SUPERIOR COURT FOR THE COUNTY OF LOS ANGELES AND FOR COSTS**<br><br>Date: September 15, 2014<br>Time: 8:30 a.m.<br>Place: Courtroom 10, Spring St. Floor<br>Assigned to: Hon. George H. Wu |

# TABLE OF CONTENTS


**Page**

I. INTRODUCTION .......... 1

II. STATEMENT OF RELEVANT FACTS AND ALLEGATIONS .......... 2

A. National Union's Demand For Arbitration And Plaintiff's Refusal To Arbitrate .......... 2

B. The Relevant Allegations In The Complaint .......... 3

C. Jurisdictional Allegations And Facts .......... 4

III. ARGUMENT .......... 5

A. Plaintiff Has Failed To State A Breach Of Contract Claim Against Landmark With Respect To The Payment Agreement .......... 6

B. Plaintiff's Negligence Cause Of Action Fails For The Same Reasons As Its Breach Of Contract Claim And Because Plaintiff Has Failed To Alleged The Breach Of A Non-Contractual Duty .......... 9

C. Plaintiff's Unfair Business Practice Claim Against Landmark Fails Based Upon Plaintiff's Own Allegations And Defendants' Uncontroverted Evidence .......... 10

D. Plaintiff Is Not A Third Party Beneficiary Of The Alleged Claims Service Agreement And Cannot State A Claim Thereunder .......... 11

IV. CONCLUSION .......... 13

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Ambrosini v. Universal Cable Holdings, Inc.*,
No. 14 Civ. 00896, 2014 WL 3362244 (N.D. Cal. July 7, 2014) ..............5, 8, 11

*Bilstein Corp. of America v. Federal Insurance Co.*,
No. 97 Civ. 56052, 1999 WL 96438 (9th Cir. Feb. 22, 1999) ..............................5

*Crescent Woodworking Co., Ltd. v. Accent Furniture, Inc.*,
No. 04 Civ. 01318, 2005 WL 5925586 (C.D. Cal. Dec. 6, 2005)......................10

*Fiol v. Doellstedt*,
50 Cal. App. 4th 1318 (Cal. App. 2d Dist. 1996).............................................11

*Freeman & Mills Inc. v. Belcher Oil Co.*,
11 Cal.4th 85, 44 Cal.Rptr.2d 420 (1995) ........................................................10

*Hegyes v. Unjian Enter., Inc.*,
234 Cal.App.3d 1103, 286 Cal. Rptr. 85 (Cal. Ct. App. 1991)............................9

*Henry v. Associated Indem. Corp.*,
217 Cal. App. 3d 1405 (Cal. Ct. App. 1990)................................................8, 12

*In re First Alliance Mortg. Co.*,
471 F.3d 977 (9th Cir. 2006) ............................................................................10

*James River Ins. Co. v. DCMI, Inc.*,
No. 11 Civ. 06345, 2012 WL 2873763 (N.D. Cal July 12, 2012) .....................10

*Ladd v. County of San Mateo*,
12 Cal. 4th 913 (1996).........................................................................................9

*Lucas v. Hamm*,
56 Cal.2d 583 (1961) ........................................................................................12

*McCabe v. General Foods Corp.*,
811 F.2d 1336 (9th Cir. 1987) .........................................................................5, 7

*Mercado v. Allstate Ins. Co.*,
340 F.3d 824 (9th Cir. 2003) ..............................................................................5

*Sanchez v. Lindsey Morden Claims Servs., Inc.*, 72 Cal. App. 4th 249 (Cal. Ct. App. 1999) .......... 12

*Sentry Ins. v. U.S. Reports, Inc.*, 322 Fed. Appx. 574 (9th Cir. 2009) .......... 7

*Thompson v. Cannon*, 224 Cal. App. 3d 1413 (Cal. Ct. App. 1990) .......... 12

*Tilbury Constrs., Inc. v. State Comp. Ins. Fund*, 137 Cal. App. 4th 466 (Cal. Ct. App. 2006) .......... 8

*Wall St. Network, Ltd. v. New York Times Co.*, 164 Cal. App. 4th 1171 (Cal. Ct. App. 2008) .......... 6

*West America Corp. v. Vaughan-Bassett Furniture Co., Inc.*, 765 F.2d 932 (9th Cir. 1985) .......... 5

**STATUTES**

Cal. Civ. Code § 1559 .......... 12

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This dispute between citizens of different states was properly removed to this Court and it should remain here. Plaintiff contends that complete diversity of citizenship is destroyed because Landmark Insurance Company ("Landmark") – one of the numerous defendants in this action – is a resident of California. But the law is clear: because Landmark was "fraudulently joined" and is a "sham defendant," the Court must disregard Landmark's citizenship for purposes of determining diversity jurisdiction.

Courts within the Ninth Circuit consider a defendant to be "fraudulently joined" or a "sham defendant" where a plaintiff cannot state a cause of action against that defendant under the settled rules of the state. In making that determination, a court may go beyond the pleadings and consider evidence submitted by the defendant. Plaintiff seeks damages resulting from its purported (1) overpayment of cost reimbursements and fees resulting from allegedly improper claims handling by Defendants and (2) its payment of excessive collateral. Even assuming that Plaintiff's allegations were true, which they are not, its allegations explicitly are directed only to the Defendant entities that *issued the policies governing Plaintiff's insurance program*. Under settled California law, no claim has been stated against Landmark for the following reasons:

*First*, Plaintiff's breach of contract claims fail as to Landmark because Landmark is not a party to any insurance contract with Plaintiff. To the extent that Plaintiff's first breach of contract claim is premised on Landmark's alleged failure in handling claims pursuant to a master Payment Agreement, the claim is untenable because neither Landmark nor any of the AIG Defendants assumed a duty to handle claims under the Payment Agreement. In other words, even though Landmark is named as an affiliated insurer in the form master Payment Agreement pursuant to which insurers may issue policies to insureds, Plaintiff has not plausibly alleged that

Landmark breached that agreement as to Plaintiff. Likewise, as will be discussed herein, Plaintiff's second breach of contract claim, in which Plaintiff attempts to assert contractual rights as a "third party beneficiary" under a claims service agreement, fails as a matter of law because Plaintiff has failed to allege facts sufficient to establish that it was an intended beneficiary of that agreement.

*Second*, Plaintiff's negligence claim fails because it has failed to identify any relevant duty on the part of Landmark, much less a breach of that duty, and has likewise failed to allege that Landmark caused Plaintiff's damages.

*Third*, Plaintiff's claim under California's Unfair Competition Law ("UCL") fails in light of the fact that Landmark never issued any insurance policy to Plaintiff. Therefore Plaintiff's request for restitution of "wrongfully obtained profits" and the bare allegation that Landmark made "improper" demands for collateral cannot be sustained. Plaintiff has also failed adequately to allege that Landmarked "aided and abetted" a UCL violation by Defendant Broadspire Services, Inc. ("Broadspire") in the absence of any allegation of "substantial assistance or encouragement" to Broadspire, as California law requires.

For these reasons, as set forth more fully below, Defendants respectfully request that the Court retain jurisdiction over this matter.

## II. STATEMENT OF RELEVANT FACTS AND ALLEGATIONS

### A. National Union's Demand For Arbitration And Plaintiff's Refusal To Arbitrate

On October 27, 2010, National Union Insurance Company of Pittsburgh, Pa. ("National Union"), "on its own behalf and on behalf of each of its related insurers that provided insurance coverage to" Plaintiff (*i.e.*, American Home Assurance Company ("AHAC") and Insurance Company for the State of Pennsylvania ("ICSOP")), served Plaintiff with a Demand for Arbitration seeking payment of (1) $2,183,444.28 in loss reimbursements, which continue to accrue; (2) $315,437 in outstanding premiums owed; and (3) $2,285,981 as security for Plaintiff's payment

obligations under the Payment Agreement. (Declaration of Anthony I. Giacobbe, Jr. in Support of Defendants' Motion to Stay or Dismiss Plaintiff's Complaint ("Giacobbe Decl."), dated Feb. 10, 2011, ¶ 2 & Ex. 1 at 1 (Dkt. 18).)

The reimbursements, premiums, and collateral demanded by National Union arose from claims made under Workers Compensation and Employers Liability insurance policies issued to SOS by AHAC and ICSOP. (Compl. ¶ 26.)

On December 8, 2010, after having accepted an extension from National Union with respect to its time to respond to the demand for arbitration, Plaintiff informed National Union that it would not agree to participate in the arbitration and, on that same day, filed the Complaint at issue here. (Giacobbe Decl., Ex. 3.) On January 7, 2011, Defendants timely removed the action to this Court. (*See* Dkt. 1.)

**B. The Relevant Allegations In The Complaint**

With respect to Landmark, which Plaintiff defines as one of the "AIG Defendants," Plaintiff asserts causes of action for negligence, breach of contract (pursuant to the Payment Agreement and as a third-party beneficiary to a claims servicing agreement), and unfair business practices. (Compl. ¶¶ 47-62, 63-68.)[1] Plaintiff's allegations, and its purported damages, are based on two categories of ostensible misconduct.

First, Plaintiff alleges that it "was damaged by having to pay more money on claims than it would have paid had the AIG Defendants and [third-party administrator] Defendants exercised due care in performing their duties to [Plaintiff]." (Comp. ¶ 42.) Specifically, Plaintiff alleges that Defendants "failed to act reasonably and exercise ordinary care and skill in the adjusting of claims against [Plaintiff] under the Policies in several regards, including but not limited to the failure to" perform the following actions: (1) "[c]omplete timely and appropriate investigations into claims;" (2)

---

[1] The Complaint contains two sets of paragraphs numbered 63-68. This citation refers to the second set of such paragraphs, found at page 14 of the Complaint.

"[a]dequately manage medical treatments for claimants;" (3) "[o]bject to claimants seeking treatment for injuries unrelated to employment with [Plaintiff];" and (4) "[r]easonably set or adjust reserves on claims." (*Id.* ¶ 41.)

Second, Plaintiff contends that the AIG Defendants, including Landmark, aided and abetted the third-party administrator defendants' violations of the UCL (which violations included the alleged overcharging of medical bill review fees and causing of Plaintiff to experience "inflated losses"). (*Id.* ¶ 64.)[2] Plaintiff also alleges that Landmark and the other AIG Defendants violated the UCL directly by "[u]sing inflated loss development and other factors that are outside industry norms to justify demands for and the holding of more collateral than reasonably necessary . . ." (*Id.*)

**C. Jurisdictional Allegations And Facts**

As alleged, Plaintiff is a California limited liability corporation, with its principal place of business in California. (Compl. ¶ 1.) On the face of the Complaint, there is diversity between Plaintiff and all Defendants, with the exception of Landmark, which is alleged to be organized and existing under the laws of California, with its principal place of business in Massachusetts. (*Id.* ¶ 16.)

Landmark, however, did not issue any of the Workers Compensation or Employers Liability policies referenced in the Complaint. (*See* Declaration of Christopher Kessel in Support of Defendants' Notice of Removal ("Kessel Decl."), ¶ 2 (Dkt. 4).) Landmark has neither demanded nor received payment of any premiums, fees, or collateral from Plaintiff pursuant to those insurance policies or the Payment Agreement. (*Id.*) Rather, National Union – as agent for AHAC and ICSOP, the only parties that issued insurance to Plaintiff – demanded payment of premiums, fees, security and other costs from Plaintiff. National Union continues in its attempts to obtain amounts owed to it by Plaintiff pursuant to the insurance issued by AHAC and ICSOP under the Payment Agreement. Landmark, because it has neither rights nor

[2] This citation refers to both of the Complaint's paragraphs numbered 64.

obligations under the Payment Agreement, has taken no steps to obtain those delinquent amounts.

## III. ARGUMENT

When opposing a motion to remand, "[t]he defendant seeking removal to the federal court is entitled to present the facts showing the joinder to be fraudulent." *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987) (affirming denial of remand) (citations omitted); *see also Bilstein Corp. of America v. Federal Insurance Co.*, No. 97 Civ. 56052, 1999 WL 96438, *1 (9th Cir. Feb. 22, 1999) (affirming denial of remand and explaining that "the district court is not limited to a plaintiff's pleadings, but is permitted to go somewhat further"). California courts have held that only a defendant may submit evidence concerning fraudulent joinder; a plaintiff is limited to the allegations in its complaint, and "the propriety of joinder cannot be assessed on the basis of new allegations raised in [a] plaintiff's motion papers." *Ambrosini v. Universal Cable Holdings, Inc.*, No. 14 Civ. 00896, 2014 WL 3362244, *2 (N.D. Cal. July 7, 2014) (finding joinder to be fraudulent where complaint 'makes numerous references to 'defendants' generally, [but] includes few factual averments concerning the conduct of [the fraudulently-joined parties]"). A court need not only consider arguments set forth in a defendants' notice of removal, but rather may "entertain all arguments on the motion to remand concerning its jurisdiction." *See West America Corp. v. Vaughan-Bassett Furniture Co., Inc.*, 765 F.2d 932, 937 n.6 (9th Cir. 1985) (considering affidavit and argument raised for first time in opposition to motion to remand).

If, based on evidence submitted by a defendant and the allegations in a complaint, the "plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state, the joinder of the resident defendant is fraudulent." *McCabe*, 811 F.2d at 1339; *see also Mercado v. Allstate Ins. Co.*, 340 F.3d 824, 826 (9th Cir. 2003) (affirming denial of remand). As

set forth below, it is "obvious" under well settled California law that Plaintiff cannot state a cause of action against Landmark.

**A. Plaintiff Has Failed To State A Breach Of Contract Claim Against Landmark With Respect To The Payment Agreement**

As a threshold matter, the Complaint is utterly void of specific allegations as to Landmark, whether with respect to Plaintiff's breach of contract claims or otherwise. In its motion to remand (Dkt. 19), Plaintiff asserts merely that Landmark is named as an affiliate of National Union in the master Payment Agreement and that, therefore, Landmark has "status as a breaching party to the Payment Agreement." (Mtn. at 7.)[3] These conclusory allegations, in the face of contrary evidence presented by Defendants, are insufficient to state a cause of action against Landmark for breach of contract.

Second, Plaintiff's allegations fail to establish the critical element of a contractual breach by Landmark. *See*, *e.g.*, *Wall St. Network, Ltd. v. New York Times Co.*, 164 Cal. App. 4th 1171, 1178 (Cal. Ct. App. 2008) (holding that to state a claim for breach of contract, a plaintiff must sufficiently plead (1) the existence of a contract, (2) Plaintiff's performance or excuse for nonperformance, (3) Defendants' breach, and (4) damages). Indeed, because Landmark *owed* no contractual duties to Plaintiff under the Payment Agreement, it could not and did not *breach* any such duties. To explain the relevant parties to the Payment Agreement, Defendants offered the sworn declaration of Defendants' Director of Loss Sensitive Accounting, Christopher Kessel. *See generally* Kessel Decl. Mr. Kessel testified that the Payment Agreement is a form "master agreement," that is used for AIG's entire Loss Sensitive book of business, including Plaintiff's account. (*Id.* ¶ 3.) Because it is a master agreement, the Payment Agreement lists all entities that *could* issue policies pursuant

---

[3] The Complaint also references alleged breaches of the Policies, but Plaintiff's motion to remand does not attempt to establish a claim against Landmark for such purported breaches.

to it. But, as Mr. Kessel testified, the Payment Agreement only governs the payment and security obligations between a policyholder, on one hand, and National Union (as agent) and the specific insurer affiliate(s) *that may issue a policy to that policyholder*, on the other hand. (*Id.* ¶ 3.) In other words, because Landmark issued no policies to Plaintiff – a fact that cannot be disputed – the Payment Agreement neither applies to, nor creates any relationship between, Landmark and Plaintiff.

In response, Plaintiff asserts that Defendants' description of the Payment Agreement "is a factual assertion disputed by the language of the allegations within the complaint . . ." (Mtn. at 7), but Plaintiff cannot identify any specific allegations of a contrary interpretation of the Payment Agreement. In any event, the Court is well within its discretion to consider Defendants' unrebutted evidence when assessing whether Landmark's joinder was fraudulent. *McCabe*, 811 F.2d at 1339. That evidence also includes the fact that Landmark never demanded any collateral from Plaintiff, and therefore could not have made any "improper demands" as Plaintiff alleges. (*See* Kessel Decl. ¶ 2.)[4]

Third, even if Plaintiff *did* have a contractual relationship with Landmark pursuant to the Payment Agreement (which it does not), Plaintiff has not adequately alleged a breach of that agreement. Plaintiff focuses exclusively on a single provision from the Payment Agreement relating to the administration of claims *by a third party*.

Specifically, the Payment Agreement provides that:

> "We will ***contract with a Third Party Administrator (TPA)*** that you select for the adjustment of your claims under the Policies provided that we consent to your selection in advance. Our relationship with the TPA will be governed by a claims service agreement between us and the TPA, a copy of which will be made available to you upon your request."

---

[4] Even if Plaintiff adequately had alleged the other elements, therefore, Plaintiff could not prove damages resulting from any breach by Landmark. *See Sentry Ins. v. U.S. Reports, Inc.*, 322 Fed. Appx. 574, 574 (9th Cir. 2009) (requiring showing that defendant's conduct was "cause-in-fact" of plaintiff's loss in order to prove breach of contract claim)

(Compl. ¶ 34 (emphasis added).)

The plain language of this provision belies Plaintiff's conclusory allegation that "the AIG Defendants . . . fail[ed] to exercise due care in the adjusting of claims against Plaintiff under the Policies . . ." (Compl. ¶ 55.) Indeed, this provision does not impose upon any of the AIG Defendants – much less Landmark – an obligation with respect to the adjustment of claims.[5] *See also, e.g.*, *Tilbury Constrs., Inc. v. State Comp. Ins. Fund*, 137 Cal. App. 4th 466, 480-81 (Cal. Ct. App. 2006) (liability to the insured from alleged mishandling of claims under a workers compensation policy does not stem from "discretionary nature of the actions of the insurance company," but rather from an "obligation of the insurer under the express language of the policy," which includes claims handling duties).

Further, Plaintiff's allegation that the AIG Defendants breached their duty of care with respect to the "supervision" and "retention" of the TPA, which Plaintiff supports by alleging the existence of a "Claims Supervision Fee" that the AIG Defendants charged Plaintiff (Compl. ¶ 40), cannot withstand Defendants' uncontroverted evidence establishing that Landmark charged Plaintiff *no fees whatsoever*, much less any "Claims Supervision Fee." (Kessel Decl. ¶ 2.)[6]

---

[5] *See, e.g.*, *Henry v. Associated Indem. Corp.*, 217 Cal. App. 3d 1405, 1417 (Cal. Ct. App. 1990) (noting that claims adjustment contract did not impose new duties to insured other than those duties arising from the insurance contract).

[6] Likewise, while Plaintiff contends that the AIG Defendants "unreasonably refused to grant consent to the selection of any third party administrator other than its preferred provider" (Compl. ¶ 36), Plaintiff makes no specific allegation that *Landmark* refused to provide consent or that Landmark's consent was even sought. *See Ambrosini*, 2014 WL 3362244 at *2 (denying motion to remand where plaintiff "include[d] few factual averments concerning the conduct" of a particular defendant, but rather "ma[de] numerous references to 'defendants' generally").

**B. Plaintiff's Negligence Cause Of Action Fails For The Same Reasons As Its Breach Of Contract Claim And Because Plaintiff Has Failed To Alleged The Breach Of A Non-Contractual Duty**

For the same reasons Plaintiff cannot allege a breach of contract claim, a possible negligence claim against Landmark fails. To prevail on a claim for negligence, a party must establish that (1) the defendant had a legal duty to use due care, (2) the defendant breached that duty; and (3) the breach was the proximate cause of the resulting injury. *See Ladd v. County of San Mateo*, 12 Cal. 4th 913, 917 (1996). "A complaint which lacks allegations of fact to show that a legal duty of care was owed is fatally defective." *Hegyes v. Unjian Enter., Inc*., 234 Cal.App.3d 1103, 1111, 286 Cal. Rptr. 85 (Cal. Ct. App. 1991) (explaining that "the existence of such a duty . . . is a question of law for the court").

Plaintiff alleges that the Payment Agreement alone imposes upon Landmark a duty of care with respect to Plaintiff. But, as discussed above, Plaintiff has failed to identify any duty owed by Landmark under the Payment Agreement, much less a breach of that duty, and the negligence claim cannot be sustained in the absence of such a duty. *See id*.

Plaintiff also fails adequately to plead that Landmark "proximately caused" Plaintiff's injury. As Plaintiff does not and cannot dispute, Landmark has not received or demanded any collateral or other payments from Plaintiff. (Kessel Decl., ¶ 2.) Plaintiff cannot, therefore, plausibly allege that Landmark "proximately caused" any harm to Plaintiff as a result of any purported negligence. Plaintiff's negligence claim against Landmark is fatally flawed for this reason, too. *See Ladd*, 12 Cal. 4th at 917-18.

In any event, Plaintiff's negligence claim also fails because settled California law requires Plaintiff to have alleged a duty *outside* of the parties' contractual relationship. *See Crescent Woodworking Co., Ltd. v. Accent Furniture, Inc.*, No. 04 Civ. 01318, 2005 WL 5925586, *4 (C.D. Cal. Dec. 6, 2005) (explaining that "the

California Supreme Court has established that 'conduct amounting to breach of contract becomes tortious only when it also violates an independent duty arising from principles of tort law'" and finding that the plaintiff "has not pled the basic elements of a negligence claim" where the plaintiff had not pled a specific duty beyond its breach of contract allegations) (quoting *Freeman & Mills Inc. v. Belcher Oil Co.*, 11 Cal.4th 85, 95, 44 Cal.Rptr.2d 420 (1995)); *James River Ins. Co. v. DCMI, Inc.*, No. 11 Civ. 06345, 2012 WL 2873763, *5 (N.D. Cal July 12, 2012) (declining to consider aspects of negligence claim based upon contractual duties because "any special duty arising out of contractual obligations would be duplicative of the contract claim . . .").

Plaintiff has failed to allege the existence of any duty owed by Landmark outside of its purported contractual duties under the Payment Agreement. (*See* Mtn. at 2 ("The Payment Agreement created a basis for a relationship between Landmark and Plaintiff.").) Accordingly, Plaintiff cannot state a claim of negligence against Landmark.

**C. Plaintiff's Unfair Business Practice Claim Against Landmark Fails Based Upon Plaintiff's Own Allegations And Defendants' Uncontroverted Evidence**

Plaintiff's claim that Landmark committed "Unfair Business Practices" under the UCL fails for several reasons. As discussed *passim*, Landmark is not a party to any insurance contract with Plaintiff and obtained no profits from Plaintiff. (Kessel Decl. ¶ 2.) This fact is fatal to Plaintiff's UCL claim against Landmark because Plaintiff's requested remedy is limited to "restitution for profits wrongfully obtained"[7] (Compl. ¶ 67), and the undisputed evidence establishes that there are no such profits. Plaintiff's contention that the AIG Defendants used "inflated loss development and

[7] Plaintiff is limited as a matter of law to seeking such "equitable" relief under the UCL. *See In re First Alliance Mortg. Co.*, 471 F.3d 977, 996 (9th Cir. 2006) (holding that "the remedies available under section 17200 [] are limited to forms of equitable relief").

other factors that are outside industry norms to justify demands for" excess collateral is also inapplicable to Landmark because Landmark never made any demand for collateral. (Compl. ¶ 64; Kessel Decl. ¶ 2.) In any event, Plaintiff's vague and undifferentiated allegations as to the "AIG Defendants" cannot support a UCL claim against Landmark. *See Ambrosini*, 2014 WL 3362244 at *2 (denying motion to remand where plaintiff "include[d] few factual averments concerning the conduct" of a particular defendant, but rather "ma[de] numerous references to 'defendants' generally"); *see also generally* Compl. (making numerous references to the "AIG Defendants" but making only a single reference to "Landmark" when discussing its citizenship).

Further, Plaintiff has not alleged facts sufficient to state a claim against Landmark for "aiding and abetting" a violation of the UCL by Broadspire. Even assuming that Plaintiff were able to demonstrate that Broadspire – a third-party administrator with no contractual obligation to Plaintiff – committed unfair business practices with respect to Plaintiff, Plaintiff has not adequately alleged that the AIG Defendants, much less Landmark specifically, provided "substantial assistance or encouragement" to Broadspire with respect to such practices. California law requires such a showing. *See, e.g., Fiol v. Doellstedt*, 50 Cal. App. 4th 1318, 1326 (Cal. App. 2d Dist. 1996) (rejecting aiding and abetting claim because the "mere failure to act does not constitute the giving of 'substantial assistance or encouragement'" to a wrongdoer). In that regard, Plaintiff's allegations that the AIG Defendants failed to exercise due care in "retaining" and "supervising" Broadspire cannot support a claim for aiding and abetting, since Plaintiff has alleged only a "mere failure to act."

### D. Plaintiff Is Not A Third Party Beneficiary Of The Alleged Claims Service Agreement And Cannot State A Claim Thereunder

Plaintiff is not an intended third party beneficiary of the Claims Service Agreement and therefore Plaintiff cannot enforce or maintain a breach of contract claim against Landmark based on that agreement. Under settled California law, a

party may sue as a third party beneficiary of a contract only if it is an "intended," not merely an "incidental," beneficiary under that contract. *See Lucas v. Hamm*, 56 Cal.2d 583, 590-591 (1961); *see also* Cal. Civ. Code § 1559 ("A contract, *made expressly for the benefit of a third person*, may be enforced by him at any time before the parties thereto rescind it.") (emphasis added).

As a matter of settled California law, an insured is not a third-party beneficiary of a claims service agreement between an insurer and a claims administrator. *See Thompson v. Cannon*, 224 Cal. App. 3d 1413, 1418-19 (Cal. Ct. App. 1990) (expressly rejecting contention that insurer's claims service agreement with independent adjuster created a third-party beneficiary contract for insured); *Henry*, 217 Cal. App. 3d at1417 ("claims adjustment contract can in no sense be said to have been made for the express benefit of a third person policyholder . . . .That contract contemplated that adjusting services would be provided for the respective benefit of the insurer and the insured, depending on the facts of the individual claim; it did not contemplate [insured's] claim would be successful or impose any new duties to [insured] other than those which inhere in the actual contract of insurance"); *see also Sanchez v. Lindsey Morden Claims Servs., Inc.*, 72 Cal. App. 4th 249, 250 (Cal. Ct. App. 1999) ("An independent adjuster engaged by an insurer owes no duty of care to the claimant insured, with whom the adjuster has no contract.").

The Claims Service Agreement is exactly the type of contract addressed by the foregoing decisions. Accordingly, Plaintiff cannot, as a matter of law, state a claim against Landmark – or any other Defendant – arising from the Claims Service Agreement.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion to remand and for costs should be denied.

SIDLEY AUSTIN LLP

Dated: August 22, 2014

By: */s/ Bridget S. Johnsen*

Bridget S. Johnsen (SBN 210778)
555 West Fifth Street
Los Angeles, California 90013
Telephone: (213) 896-6678
Facsimile: (213) 896-6600
bjohnsen@sidley.com

Nicholas P. Crowell *(pro hac vice application pending)*
Jon W. Muenz *(pro hac vice application pending)*
787 Seventh Avenue
New York, NY 10019
Telephone: (212) 839-5300
Facsimile: (212) 839-5599
ncrowell@sidley.com

*Attorneys for all Defendants (except Broadspire Services, Inc. and Crawford & Company, Inc.)*